**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**ANDY E. STIDHAM**                                                                        **PLAINTIFF**

**VERSUS**                                         **CIVIL ACTION NO. 3:19-cv-4-CWR-MTP**

**COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION**                                             **DEFENDANT**

## REPORT AND RECOMMENDATION

Plaintiff Andy E. Stidham brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits. Having reviewed the parties' submissions, the record, and the applicable law, the undersigned recommends that the Commissioner's disability determination be affirmed and this matter be dismissed.

## PROCEDURAL HISTORY

Plaintiff filed for disability insurance benefits on April 19, 2016 alleging that his disability began on March 20, 2015 when he was 40 years old. Admin. R. [9] at 22. After the agency denied Plaintiff's application, a hearing was held before an Administrative Law Judge ("ALJ") on December 17, 2017. *Id*. The ALJ considered Plaintiff's severe impairments including a history of repair to Plaintiff's torn left Achilles tendon, repair to his left knee, and tibiotalar and subalar arthropathy (ankle and hindfoot arthritis). *Id*. at 25. The ALJ issued an opinion finding that Plaintiff was not disabled and not entitled to benefits. *Id*. at 30. Plaintiff then requested review of the ALJ's decision, but the Appeals Council denied review. *Id*. at 5-8. This appeal followed.

1

**ADMINISTRATIVE LAW JUDGE'S DECISION**

In his opinion, the ALJ applied the five-step analysis found in 20 C.F.R. § 404.1520(b)-(g)[1] and found that Plaintiff was not disabled according to the Social Security Administration ("SSA") definition. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 20, 2015. Admin. R. [9] at 24.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: repeated repairs to his left Achilles tendon, repairs to his left knee, and tibiotalar and subtalar arthropathy. *Id*. at 25. These impairments were found to significantly limit Plaintiff's ability to perform basic work activities. *Id*. The ALJ noted that Plaintiff also suffered from a history of deep vein thrombosis (DVT) and a hematoma, but these were considered non-severe impairments because they caused minimal functional limitations and lasted for less than 12 months. *Id*.

At step three, the ALJ found that Plaintiff's impairments did not meet the requirements of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. The ALJ considered

---

[1] This analysis requires the ALJ to make the following determinations:
(1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);
(2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);
(3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);
(4) whether the impairment prevents the claimant from doing past relevant work (if not, a finding of "not disabled" is made);
(5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.920. The burden of proof rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining her burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

Listing 1.02 (major dysfunction of a joint) and Listing 1.03 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint), but found that the medical records did not demonstrate that these Listings were met. *Id*.

The ALJ then considered Plaintiff's residual functional capacity ("RFC") and found that Plaintiff could perform sedentary work as defined by 20 C.F.R. § 404.1567(a).[2] *Id*. at 26. The ALJ found that Plaintiff would need to sit or stand at will (but he would not be off task when changing position) and would need to avoid crouching and extreme temperatures. *Id*. Additionally, the ALJ found that Plaintiff could not stoop or kneel for more than 5% of an eight-hour workday, but he could occasionally climb. *Id*.

At step four, the ALJ found Plaintiff was unable to perform his past work as a deckhand, crane operator, and deck operator because this was classified as medium to heavy exertion work and Plaintiff was now limited to sedentary work. *Id*. at 28.

At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id*. at 29. A vocational expert testified at the hearing that an individual with Plaintiff's same characteristics could work as a surveillance monitor, thread separator, or table worker. *Id*. The ALJ concluded that Plaintiff was not under a disability through the date of his decision and not entitled to benefits. *Id*. at 30.

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

## STANDARD OF REVIEW

This Court will only review the Commissioner's denial of benefits to determine whether "(1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The Commissioner's decision must be affirmed when there is substantial evidence to support the findings. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

"Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (internal quotations omitted). Conflicts in evidence are the purview of the Commissioner and are not for the Court to resolve or review de novo. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). "Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (internal quotations and citation omitted).

## ANALYSIS

Plaintiff raises four issues on appeal: (1) whether substantial evidence supports the ALJ's finding that Plaintiff's history of DVTs and a hematoma were not severe impairments; (2) whether substantial evidence supports the ALJ's finding that Plaintiff's impairments do not satisfy the criteria for a Listed Impairment; (3) whether substantial evidence supports the ALJ's finding that Plaintiff can perform sedentary work; and (4) whether substantial evidence supports the ALJ's finding that Plaintiff can perform other jobs that exist in significant numbers in the economy.

**(1)** *Whether substantial evidence supports the ALJ's finding that Plaintiff's history of DVTs and a hematoma were not severe impairments*

At step two of the sequential analysis, the ALJ found that Plaintiff's severe impairments included repeated repairs to his left Achilles tendon, repairs to his left knee, and tibiotalar and subtalar arthropathy. Admin. R. [9] at 25. The ALJ noted that Plaintiff also suffered from a history of deep vein thrombosis (DVT) and a hematoma, but these were considered non-severe impairments because they caused minimal functional limitations and lasted for less than 12 months. *Id.* Plaintiff submits that his DVTs (clots) and a hematoma were severe impairments according to the social security definition, and to find otherwise was erroneous. Defendant counters that the ALJ recognized the seriousness of Plaintiff's DVTs and hematomas from July 2015 to October 2015, but also recognized that these ailments did not last for a continuous period of twelve months.

"A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity." *Craig v. Berryhill*, 2019 WL 1387696, at *3 (M.D. La. Mar. 27, 2019) (citing 20 C.F.R. § 404.1505; 416.905). Step two in the sequential analysis "involves two separate inquiries, a severity requirement and a duration requirement." *Beggs v. Colvin*, 2015 WL 5542540, at *3 (N.D. Tex. Aug. 31, 2015). "[T]he impairment must both last for twelve months and be severe." *Craig*, 2019 WL 1387696 at *5. These can be confused, but the duration requirement only applies to the existence of the impairment, while the severity requirement considers whether the impairment impacts the claimant's ability to work. *Singletary v. Brown*, 798 F.2d 818, 821 (5th Cir. 1986). The impairment must last for a continuous twelve-month period, but the impairment does not have to be severe for the whole twelve months. *Id.*

5

"[A]n impairment can be considered as "not severe" only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quotations and citation omitted). The ALJ cited *Stone* in his opinion and applied the correct standard; therefore, the only question is whether the ALJ's finding at step two was supported by substantial evidence. Admin. R. [9] at 25.

"The Regulations define a non-severe impairment as an impairment or combination of impairments that do no significantly limit a claimant's physical or mental ability to do basic work activities." *Hobbs* v. *Astrue*, 627 F. Supp. 2d 719, 727 (W.D. La. 2009). "Basic work activities" include physical functions such as walking, standing, siting, lifting, pulling, pushing, reaching, carrying; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; the use of judgment, responding to supervision and co-workers, and managing changes in a routine work setting. *Id*. Plaintiff lists several hematological issues that he suffered in 2015, but does not provide any evidence demonstrating that these issues interfered with his ability to perform basic work activities. *See* [12] at 11.

Plaintiff went to St. Dominic-Jackson Memorial Hospital on July 24, 2015 for presurgical vitals and lab work. Bilateral pulmonary emboli were discovered during this pre-surgery visit. Admin. R. [9] at 487. He was prescribed Xarelto and discharged on July 29, 2015. *Id*. at 487-88. In August of 2015, Plaintiff had an inferior vena cava filter placed. *Id*. at 575. On September 19, 2015, Plaintiff presented again at St. Dominic Hospital. *Id*. at 576. DVT was found in his lower extremity and he was placed on Lovenox for anticoagulation. *Id*.

Plaintiff developed a hematoma on his right thigh in October of 2015. Admin. R [9] at 726. The hematoma was drained, but the cause of the large bruise was not determined. *Id*. On

6

November 26, 2015, Plaintiff was treated again at the emergency room because an incision on his leg continued to bleed after a surgery two days prior. *Id*. at 638. His medication was adjusted which caused the bleeding and discomfort to stop. *Id*. at 661.

The records indicate that Plaintiff's blood clots and single hematoma met neither the severity requirement nor the duration requirement. The ALJ noted that "[t]he treatment evidence of record does not indicate the claimant suffered any further episodes of DVT or emboli. I find they were transitory in nature and thus nondurational and find them to be nonsevere." Admin. R. [9] at 27.

It is Plaintiff's burden at step two to demonstrate that his impairments impact his ability to perform basic work activities. *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991) ("[A] claimant must establish that he has an impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities"); *Wilkinson v. Colvin*, 2017 WL 57849, at *2 (S.D. Miss. Jan. 5, 2017) ("A claimant bears the burden of proof with respect to the first four steps of the inquiry"). Plaintiff has not provided any examples of how the incidents of DVT and the single hematoma impacted his ability to perform physical work duties. Moreover, Plaintiff has not established that the twelve-month duration requirement was met regarding his DVT or hematoma. Substantial evidence supports the ALJ's finding at step two that Plaintiff's episodic DVTs and single hematoma were not severe impairments.

**(2)** ***Whether substantial evidence supports the ALJ's finding that Plaintiff's impairments do not satisfy the criteria for a Listed Impairment***

Plaintiff argues that he satisfies Listing 1.02 (major dysfunction of a joint) and 1.03 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint) and should have been found disabled at this step in the process. At step three, the ALJ considers whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R., Part 404,

7

Subpart P, Appendix 1. Plaintiff bears the burden of proof at this step. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

Listing 1.02 for major dysfunction of a joint requires a "gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." 20 C.F.R., Part 404, Subpt. P, App'x 1 § 1.02. There must also be either "(A) involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle) resulting in inability to ambulate effectively, as defined in 1.00B2b; or (B) [i]nvolvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c." *Id*. The regulations further explain:

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes seriously with the individual's ability to independently initiate, sustain, or complete activities…. To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with a single hand rail.
> *Id*. § 1.00(B)(2)(b).

In his opinion, the ALJ found that Listing 1.02 was not met. Admin. R. [9] at 25. The ALJ noted that the record did not reflect that Plaintiff had a gross anatomical deformity or that Plaintiff was unable to ambulate effectively as defined by § 1.00(B)(2)(b). *Id*. The ALJ further

8

found no involvement of a major joint in each upper extremity that resulted in an inability to perform fine and gross movements. *Id*.

Listing 1.03 for reconstructive surgery or surgical arthrodesis of a major weight-bearing joint also requires the inability "to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." 20 C.F.R., Part 404, Subpt. P, App'x 1 § 1.03.

The ALJ found that Plaintiff did not meet Listing 1.03. Admin. R. [9] at 25. "[T]he record… failed to demonstrate an inability to ambulate effectively, as defined by 1.00B2b, which occurred, or is expected to occur within 12 months of onset." *Id*.

Plaintiff points to incidents in the record to establish that he cannot ambulate effectively. On July 24, 2015, Plaintiff was seen at the emergency room for chest pain and shortness of breath and his chart reflected that he could walk but needed crutches to ambulate. *Id*. at 481. On January 16, 2018, Plaintiff presented at the emergency room and under "Fall Risk" it is recorded "use of ambulatory aid or unstable gait." *Id*. at 37. On December 30, 2015, at a visit with the Jackson Oncology Associates, Plaintiff reported that he always used a walker. *Id*. at 93. On October 14, 2015, Plaintiff went to Trustcare in Brandon, Mississippi complaining of pain and swelling his leg and the treatment notes reflected that Plaintiff was "wheelchair-bound." *Id*. at 113.

Defendant, however, submits that there is substantial evidence in the record to support a finding that Plaintiff could ambulate and that the evidence submitted by Plaintiff is not objective medical evidence. Defendant notes that several records that Plaintiff references to demonstrate his difficulties with walking regard emergency room visits for unrelated issues, and while Plaintiff may have been placed in a wheelchair at the hospital he has not argued that he requires a

wheelchair to ambulate. For example, Plaintiff cites to his emergency room visit on December 17, 2015. *See* [12] at 13. He went to the emergency room complaining of tachycardia (rapid or irregular heartbeat) and was brought to the emergency room in a wheelchair. Admin R. [9] at 684. Defendant submits that this is not reliable evidence of Plaintiff's inability to ambulate.

On July 19, 2016, Plaintiff's treating physician, Dr. Gandy, observed in a residual functional capacity questionnaire that Plaintiff should walk or stand for two hours in an eight-hour work day, and found that Plaintiff would need to get up and walk every 90 minutes. *Id*. at 815. Dr. Gandy also stated that Plaintiff did not need to use a cane or assistive device when walking or standing. *Id*.

The record also includes another functional capacity evaluation from Work Well in 2016. *Id*. at 799-812. The examiners noted that Plaintiff could perform medium exertional work and had "no difficulty" performing light activities around the house. *Id*. at 801, 808.[3] Additionally, Plaintiff testified at his hearing before the ALJ that he still performed his own grocery shopping at Walmart, but he no longer exercises by walking laps around Walmart because it hurt his back and ankle. *Id*. at 150. He also testified "I do my little tasks around the house, which I'll clean for a little while and then I'll go watch TV for a little while or start a load of laundry." *Id*. at 155. Plaintiff further testified that it may not be in the records, but Dr. Gandy told him to use a cane on uneven surfaces and he would carry a cane with him when he went out. *Id*. at 159-60. He would not use the cane at home to build up his legs and recover his balance. *Id*.

Both parties have identified records that support their opposing positions. However, "[c]onflicts of evidence are for the Commissioner to resolve; in applying the substantial evidence

---

[3] The evaluation also reflected that Plaintiff believed he could go back to work as a crane operator on land, as opposed to offshore, if he could get up and move around in the cab of the crane and believed he would be able to climb in and out of a crane. Admin. R. [9] at 801.

standard, [courts] do not reweigh the evidence, but merely determine whether the Commissioner's decision is supported by substantial evidence." *Belk v. Colvin*, 648 F. A'ppx 452, 455 (5th Cir. 2016) (citing *Perez*, 415 F.3d at 461). Records from Plaintiff's own doctor stating that ambulation devices are unnecessary and Plaintiff's testimony that he performs most activities for himself, including grocery shopping, is enough to support the ALJ's finding that Plaintiff's ability to ambulate was not so limited that he satisfied Listing 1.02 or 1.03. Thus, the undersigned recommends affirming on this issue.

### (3) *Whether substantial evidence supports the ALJ's finding that Plaintiff can perform sedentary work*

The ALJ considered Plaintiff's impairments and developed the RFC. He found that Plaintiff could perform sedentary work, as defined by 20 C.F.R. § 404.1567(a), with additional limitations. Admin. R. [9] at 26. The ALJ found that Plaintiff's impairments could reasonably be expected to produce the alleged symptoms, but claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence or record. *Id*.

Plaintiff takes issue with this RFC finding for several reasons. First, he argues that the ALJ improperly summarized his medical history and inappropriately found that his statements were not entirely consistent with the medical records. Plaintiff complains that the ALJ referenced medical records from 2013 and 2014, prior to the disability onset date in 2015. *Id*. at 26-27.

Plaintiff, however, did not explain how consideration of Plaintiff's long medical history, leading to the apex of his joint issues in 2015, prejudiced him.[4] Moreover, the ALJ is not

---

[4] Plaintiff also asserts throughout his brief that the Appeals Council declined to consider several new medical records from Dr. Gandy. *See* [12] at 3, 9. The Appeals Council found that

required to recite the medical history in a certain format. *Devries v. Saul*, 2020 WL 1584393, at *2 (S.D. Miss. Mar. 31, 2020) ("That [the ALJ] did not follow 'formalistic rules' or engage in an exhaustive discussion of every subjective complaint does not require reversal or remand") (citing *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994)); *Audler*, 501 F.3d at 448. The ALJ provided a substantial summary of the evidence and was not required to discuss in detail every piece of the record. *Audler*, 501 F.3d at 448 ("the ALJ is not always required to do an exhaustive point-by-point discussion" but must discuss the evidence offered and explain why the claimant is found disabled).

Second, Plaintiff submits that the ALJ labeled him as "obese" and improperly considered obesity as a potential contributing factor to his other medical issues. Yet, a review of the ALJ's opinion demonstrates that the ALJ was viewing the medical evidence in the light most favorable to Plaintiff. The ALJ noted "the claimant does suffer from some residual impairment from the surgeries, as well as tibiotalar and subtalar arthropathy and obesity, the combination of which cause more than minimal limitation in his ability to do work but do not reach a disabling level of severity." Admin. R. [9] at 27. If the ALJ had ignored Plaintiff's body mass index, as Plaintiff suggests, the ALJ would have found Plaintiff even less impaired. The RFC was not erroneous because the ALJ mentioned Plaintiff's weight.

---

several of the new records were copies from Exhibits 4F, 8F, and 9F and the remainder of the new evidence did not "show a reasonable probability that it would change the outcome of the decision." Admin. R. [9] at 6.

If review is denied, "[t]he regulations do not require the [Appeals Council] to provide discussion of the newly submitted evidence or give reasons for denying review." *Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015). Additionally, Plaintiff has not explained how these records would have changed the Commissioner's decision or if they relate to the relevant period. *Logan v. Colvin*, 2016 WL 6772788, *3 (N.D. Miss. Nov. 15, 2016) ("new evidence" must (1) be new; (2) be material; and (3) the claimant must demonstrate good cause for not having incorporated the evidence in the record).

Third, Plaintiff takes issue with the ALJ's decision to assign "great weight" to the opinion of Dr. Gandy, his treating physician. The ALJ wrote "[b]ecause Dr. Gandy is a treating physician with a long-term relationship with the claimant, and because his findings are supported by the evidence and consistent with my residual functional capacity assessment, I afford his opinion considerable weight." Admin. R. [9] at 28.

It is somewhat unusual to argue that the opinion of one's treating physician should not be given great weight, especially when the regulations state "we give more weight to medical opinions from your treating sources, since these sources are likely to be medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s)…." 20 C.F.R. § 404.1527(c)(2). The Fifth Circuit has concluded that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, the ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views…." *Newton*, 209 F.3d at 453 (emphasis in original). "The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Id*. at 455. Therefore, the ALJ could only have given Dr. Gandy's opinion less weight if he performed a separate detailed analysis explaining why he disagreed with the opinion of Plaintiff's long-time treating physician. The ALJ followed the social security regulations and did not err in finding that Plaintiff could perform sedentary work.

**(4)** ***Whether substantial evidence supports the ALJ's finding that Plaintiff can perform other jobs that exist in significant numbers in the economy***

Plaintiff also takes issues with the ALJ's analysis regarding other jobs that Plaintiff could perform. At step five, the ALJ questioned the vocational expert (VE) whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and RFC.

13

Admin. R. [9] at 162-164. The VE testified that an individual with Plaintiff's limitations could work as a surveillance system monitor, thread separator, or table worker. *Id*.

The ALJ then asked the VE if jobs existed for an individual who would need to walk around and be away from his work station every thirty minutes.[5] *Id*. at 164. The VE testified that no jobs existed for such an individual because it would take that individual off task for 15% of the workday. *Id*. at 164-165.

An ALJ may rely upon the testimony of a vocational expert. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) ("the vocational expert relied on his expertise to arrive at the conclusions that he gave the ALJ, and he explained how he arrived at his conclusions"). The ALJ must incorporate into his hypothetical question all of Plaintiff's disabilities supported by the evidence and recognized by the ALJ. *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002).

Plaintiff submits that his medical records support that he needs to get up every thirty minutes and, therefore, cannot perform any work. Plaintiff's own physician, however, noted that Plaintiff would need to get up and walk every *ninety minutes*. Admin R. [9] at 815. Moreover, Plaintiff does not point to any records that show he needs to get up every thirty minutes and would need to be away from his work station. The ALJ properly incorporated Plaintiff's RFC into the hypothetical question posed to the VE and the undersigned recommends that the Commissioner's opinion be affirmed on this issue.

---

[5] It is not clear from the record why the ALJ asked this subsequent question. The ALJ only said, "I'm thinking about some of the testimony today." Admin. R. [9] at 164. He may have been referencing the Plaintiff's testimony from earlier in the hearing when Plaintiff said that Dr. Raju, a physician at St. Dominic, told him that he should get up and move around every 30-45 minutes. *Id*. at 158.

## RECOMMENDATION

For the reasons set forth above, the undersigned recommends that the Commissioner of Social Security's decision be AFFIRMED and that this matter be DISMISSED with prejudice.

## RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge, and the opposing party. The district judge at the time may accept, reject, or modify in whole or in part, the recommendations of the magistrate judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except on grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 18th day of June, 2020.

s/ Michael T. Parker  
United States Magistrate Judge
